PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Proposed Class

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIANCA GARCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEW YORK LIFE INSURANCE COMPANY, a New York corporation,<br><br>Defendant. | Case No.  **'26 CV 1762 WQHJLB**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF B&P CODE SECTION 17529.5 (UNLAWFUL SPAMMING)** |

- 1 -

CLASS ACTION COMPLAINT

## I.    NATURE OF ACTION

1.    Defendant New York Life pays high commissions to various "affiliate marketers" that ruthlessly spam anyone with an e-mail address. New York Life's affiliate marketers send spam use falsified header information, spoofed domains (to evade spam filters), and false and deceptive subject lines – everything that people hate about spam.

2.    Fortunately, California's robust Anti-Spam Law imposes both strict liability and liquidated damages on entities like New York Life that benefit from deceptive spam. It dispenses with the requirement of proving actual damages, intent, or scienter, and forces companies to actively monitor their e-mail promotions by imposing exceptionally broad liability.[1]

## II.    PARTIES, JURISDICTION AND VENUE

3.    Plaintiff is and was at all times mentioned herein a citizen of the State of California who received a misleading spam e-mail promoting New York Life's insurance products.

4.    New York Life is an insurance company based in New York that sells life insurance and financial services products. New York Life has purposefully availed itself of the benefits of conducting business in California by deploying and directing a network of affiliate marketers to promote its services to California residents. New York Life authorizes, incentivizes, and exercises control over these affiliates — who operate as its agents or representatives — by providing marketing materials, tracking tools, compensation structures, and performance requirements specifically designed to generate subscriptions and revenue from users, including those located in California. These

---

[1]    *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 829-30 (Cal. Ct. App. 2d Dist. 2011) (Section 17529.5 "impos[es] strict liability on advertisers who benefit from (and are the ultimate cause of) deceptive e-mails"); *Id*. at 822 (Section 17529.5 "does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message"); Id at 821 ("Section 17529.5 … does not include any 'scienter' or intent requirement"); *Id*. at 820 ("[S]ection 17529.5 does not require the plaintiff to show that the defendant actually made a false or deceptive statement…. [B]y its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails."

- 2 -

CLASS ACTION COMPLAINT

affiliates regularly target California consumers through online advertisements, websites, and tracking technologies, and New York Life knowingly accepts and profits from the resulting California-based traffic and transactions.  The claims asserted herein arise directly out of and relate to this California-directed conduct, rendering the exercise of personal jurisdiction over New York Life in this forum both proper and consistent with traditional notions of fair play and substantial justice.  Indeed, it is believed that New York Life has over 50,000 clients in California and multiple offices in California.

5.    New York Life deliberately outsources its membership solicitation to third-party affiliate marketers to reap the benefits of large-scale unlawful spamming.  New York Life financially incentivizes these affiliates — paying them on a per-lead or per-conversion basis — to flood inboxes with deceptive "discounts" on New York Life products, knowing that aggressive, non-consensual email campaigns generate sign-ups.  These affiliates are not rogue actors; they are integral to New York Life's customer-acquisition strategy and are compensated precisely because spam works.  By structuring its marketing this way, New York Life attempts to enjoy the profits of illegal email campaigns while plausibly denying responsibility for the very misconduct it knowingly authorizes, directs, and benefits from — conduct squarely prohibited by California Business & Professions Code § 17529.5.

6.    This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states.  Indeed, based upon publicly available information, the class is believed to include over 10,000 members and the amount in controversy is believed to exceed $100 million.

7.    Venue is proper in this County because Defendant is not a citizen of California, meaning that venue is proper in any Count that plaintiff selects.

CLASS ACTION COMPLAINT

### III.    FACTUAL ALLEGATIONS

8.      Plaintiff Bianca Garcia is a California resident and citizen and is the owner of the e-mail address biancamua28@yahoo.com.  New York Life spams her and other class members relentlessly.  In the most recent example, on March 18, 2026 she received a spam e-mail from the nonsensical address "zxncagqocuxj@techzaim.com" with the subject line **"P¬rote¬c¬t¬ ¬Y¬o¬ur F¬a¬mi¬l¬y's ¬T¬omor¬r¬ow,¬ ¬Tod¬a¬y¬"**[2] That spam is attached hereto as Exhibit "A".

9.      The spam was sent from a "spoofed" e-mail address (zxncagqocuxj@techzaim.com) to conceal the identity of the true sender and evade spam filters.  Indeed, after receiving the e-mail, Plaintiff searched the publicly available WHOIS database to identify the sender associated with the domain, but was unable to do so, because the sending domain was not registered to, publicly associated with, or traceable to New York Life through WHOIS or any other public registry.

10.     Plaintiff clicked on the link in the spam and was eventually taken a landing page of Defendant's website, https://www.newyorklife.com/marketing/sales/nyl-form?cjdata=MXxOfDB8WXww&cjevent=5a170e2123b611f1824000070a1eba37&tid=1949&cjcmpid=101616355&PublisherName=MVO&cmpid=afc_AFF25_AM_CJ_na_na_na_prosp_na_na_na_mar_0_0&gad_source=7&gad_campaignid=23124173037&dclid=CKzEuoW6rJMDFSOefwQdqs0imA.  The fact that the spam email ultimately directs users to a New York Life landing page containing embedded affiliate tracking parameters demonstrates that the campaign is part of a coordinated affiliate marketing program from which New York Life benefits and over which it exercises control.  The URL includes multiple tracking identifiers—such as cjevent, cjcmpid, PublisherName,

---

[2]   The subject line uses repeated soft hyphen characters that are invisible to the naked eye when inserted inside ordinary words, such as "P-rote-c-t -Y-o-ur F-a-mi-l-y's -T-omor-r-ow, -Tod-a-y" In practical terms, the visible subject is simply "Protect Your Family's Tomorrow, Today," but the sender split the words apart with hidden characters so the string is not a normal plain-text phrase at the machine level.  That technique is used for the sole purpose of evading spam filters that use keyword matching, because the automated systems do not read the subject as the ordinary words "protect," "your," "family," or "tomorrow."

and campaign codes (e.g., cmpid=afc_AFF25_AM_CJ…) — which are characteristic of Commission Junction (CJ) affiliate tracking and are specifically designed to attribute user traffic and resulting conversions back to a particular publisher or marketer. These parameters enable New York Life to identify which affiliate generated the lead and to compensate that affiliate accordingly, evidencing a commercial relationship and financial incentive structure. By providing tracked links, maintaining the landing page, and accepting leads generated through these campaigns, New York Life ratifies and benefits from the affiliate's conduct, including any unlawful or deceptive email practices used to drive traffic, thereby supporting a finding that the affiliate was acting as New York Life's agent or within the scope of its marketing program

11. The email's metadata and embedded code reflect multiple indicia of spam evasion and deceptive marketing practices. The email's metadata and embedded code reflect multiple indicia of spam evasion and deceptive marketing practices because they demonstrate deliberate efforts to obscure the sender's identity, bypass authentication protocols, and manipulate how the message is interpreted by both spam filters and recipients. The header information reveals inconsistencies in sender domains and failed or suspicious authentication signals (such as SPF/DKIM/DMARC issues), suggesting the message may have been relayed through third-party infrastructure or spoofed sources rather than a legitimate, traceable business. At the same time, the subject line and sender name are altered using hidden or non-standard characters (e.g., soft hyphens) to evade keyword-based filtering and disguise the true content of the message. Within the body, the email relies heavily on HTML formatting, image-based content, and tracking-enabled hyperlinks routed through intermediary domains, which mask the ultimate destination and allow the sender to monitor user engagement. The presence of tracking pixels, minimal plain-text content, and generic or misleading branding further indicates a coordinated attempt to maximize deliverability and click-through rates while minimizing transparency, all of which are hallmarks of sophisticated spam and deceptive marketing campaigns

- 5 -
CLASS ACTION COMPLAINT

12. The subject line of the spam is misleading in violation of California Business & Professions Code § 17529 because it is deliberately manipulated to appear as a straightforward, benign message while concealing its true commercial and promotional nature. By inserting hidden or non-standard Unicode characters within ordinary words, the sender disguises the actual content from spam filters and obscures the message's advertising purpose from recipients, creating a mismatch between how the subject line appears and what it actually represents at a technical level. Moreover, the phrasing of the subject line suggests general informational or personal content rather than a solicitation, when in fact the email is a commercial advertisement designed to induce the recipient to click through to marketing materials or offers. This combination of obfuscation and omission of the email's true purpose is likely to mislead a reasonable recipient about a material fact—namely, the nature and subject matter of the message—thereby violating § 17529.5.

13. The preceding is just a single example of the spam that Defendant sends to class members. Based on publicly available sources, it is believed that New York Life is responsible for over 100,000 spam e-mails to Californians each year.

14. Plaintiff's e-mail address is a "California e-mail addresses" because Plaintiff ordinarily accesses the e-mail address from computers in California. *See* Bus. & Prof. Code § 17529.1(b).

15. The spam identified above is an "Unsolicited Commercial e-mail advertisement" because plaintiff had no pre-existing relationship with Defendant and because the e-mail was initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1(c).

16. Plaintiff never gave "direct consent" to receive commercial e-mail advertisements from Defendant or its marketing agents. Indeed, "direct consent" under the statute requires a unique level of specificity and clarity that must be informed, knowing, and explicit — meaning that consumers must be told clearly that they are

CLASS ACTION COMPLAINT

agreeing to receive advertising emails from a particular sender, and for what purpose, at the time they provide their email address.

17. The above spam violates Bus. & Prof. Code § 17529.5 in three separate and distinct ways:

a. **Unauthorized Use of a Domain Name in Violation of Section 17529.5(a)(1).** The spam email's use of the domain techzaim.com constitutes unauthorized use of a domain name in violation of Business and Professions Code § 17529.5(a)(1) because the domain has no legitimate relationship to New York Life and was used solely as a transmission shell to conceal the sender's true identity. Section 17529.5(a)(1) prohibits the use of a domain name in a commercial email that is "falsified, misrepresented, or forged," including where the domain is not owned by, licensed to, or authorized by the advertiser whose goods or services are being promoted. Here, the domain is a nonsensical, content-free domain that bears no semantic, commercial, or traceable connection to New York Life and does not enable a recipient — or a reasonable investigator using publicly available tools — to identify who actually sent or authorized the message. The deliberate selection of an unrelated, meaningless domain serves no purpose other than to evade spam filters, frustrate traceability, and obscure accountability, which is precisely the conduct the statute was enacted to prevent. By transmitting the email from a domain that does not identify the sender and is not authorized for use by Defendant, New York Life engaged in the unauthorized use of a domain name, rendering the header information materially false and unlawful under § 17529.5(a)(1).

b. **Misrepresented Header Information In Violation of Section 17529.5(a)(2).** The email contains misrepresented header information in violation of Business and Professions Code § 17529.5(a)(2) because the header data was deliberately structured to conceal the true sender and

- 7 -

CLASS ACTION COMPLAINT

prevent the recipient from identifying or tracing the advertiser responsible for the message. Section 17529.5(a)(2) prohibits header information that is falsified or misrepresented, including the use of a "from" name, return address, or domain that does not accurately identify the party who initiated or benefited from the email. Here, the email was sent from a spoofed or nonsensical sender address (zxncagqocuxj@techzaim.com) that bears no relationship to New York Life, the promoted offer, or any legitimate business disclosed in the message. Nothing in the header permits a recipient—or a reasonable investigator using publicly available tools such as WHOIS — to determine who actually sent or authorized the email. This lack of traceability is not incidental; it is the intended effect of using fabricated header information to mask the sender's identity and evade accountability. California courts have repeatedly held that header information is misrepresented where it fails to identify the actual sender on its face and is not readily traceable to that sender, even if the advertiser's identity is later implied or suggested elsewhere. Because the header here affirmatively obscures the true sender and frustrates traceability to the responsible advertiser, it constitutes misrepresented header information in violation of § 17529.5(a)(2).

c. **Deceptive Subject Line and Contents in Violation of Section 17529.5(a)(3).** The email contains a deceptive subject line and misleading contents in violation of Business and Professions Code § 17529.5(a)(3) because the sender knowingly used a subject line that would be likely to mislead a reasonable recipient about a material fact regarding the nature and substance of the message, as described in detail above. Because the subject line falsely describes the contents of the email and was crafted to mislead recipients acting reasonably under the circumstances, the email violates § 17529.5(a)(3).

- 8 -

18.    Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiff has in fact suffered concrete, particularized harm as a result of Defendant's conduct.  Plaintiff spent valuable time and attention investigating the misleading offer; searching the WHOIS database to learn who the e-mail came from; incurred opportunity costs and lost productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage on a metered data plan, and battery life.

19.    The unauthorized domain name, misleading headers and subject lines also invaded Plaintiff's privacy and disrupted the ordinary use and enjoyment of Plaintiff's email account, diminishing its value as a communication tool and necessitating additional filtering and security precautions. These injuries were directly caused by Defendant's unlawful email and are redressable by statutory and injunctive relief.

20.    Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements.

## IV.    CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action on behalf of all persons similarly situated and seeks certification of the following class:

> **All California citizens who received any commercial e-mail promoting New York Life at a California e-mail address where such email(s) contained: (1) a falsified, misrepresented, or forged domain name; (2) falsified, misrepresented, or forged header information; or (3) false or misleading subject line or contents.**

22.    The above-described class of persons shall hereafter be referred to as the "Class."  Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel.  Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in

- 9 -

connection with a motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

23. **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but Plaintiff is informed and believes, and thereon, alleges that there are at least 100,000 members of the Class.

24. **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct described herein.

25. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and intend to prosecute this action vigorously.

26. **Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

    a. Whether Defendant sent unsolicited commercial e-mail to Class members;

    b. Whether Defendant sent such messages using forged headers, falsified domains, and spoofed e-mail addresses.

27. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

28. **Ascertainability**. Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer

order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

29.    Plaintiff received the above unsolicited commercial e-mail at a California e-mail address within one year prior to filing the Complaint at a California e-mail address.

30.    As shown above, the spam violated one or more provisions of Section 17529.5.

31.    Defendant is strictly liable for violation of Section 17529.5 for sending spam and is liable in the amount of $1,000 per spam per class member.

32.    Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

33.    Plaintiff and every Class member who received any violative e-mail are entitled to $1,000 in liquidated damages per e-mail from Defendant (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a. For an order certifying that the action be maintained as a class action, that Plaintiff be designated as class representative, and that undersigned counsel be designated as class counsel;

b. For all available declaratory, legal, and equitable relief including injunctive relief;

- 11 -

CLASS ACTION COMPLAINT

c.  For statutory damages;

d.  For punitive damages;

e.  For attorneys' fees and costs as allowed by law; and

f.  For any and all other relief at law or equity that may be appropriate.

Dated:  March 19, 2026                    PACIFIC TRIAL ATTORNEYS, APC


                                          By: _/s/ Scott J. Ferrell___
                                          Scott J. Ferrell
                                          Attorneys for Plaintiff and the Proposed Class

- 12 -

CLASS ACTION COMPLAINT